(868 P.2d 540)
No. 70,120

ENVIRONMENTAL VENTURES, INC., *Appellant*, v. ALDA SERVICES CORP., *Appellee.*

Opinion filed February 11, 1994.

*Timothy J. Sear* and *Andrew C. Marquardt*, of Polsinelli, White, Vardeman & Shalton, of Overland Park, for appellant.

*Paul S. McCausland*, of Young, Bogle, McCausland, Wells & Clark, P.A., of Wichita, for appellee.

Before RULON, P.J., GERNON, J., and RICHARD W. WAHL, District Judge Retired, assigned.

GERNON, J.: Environmental Ventures, Inc., (EVI) appeals the district court's dismissal of its action against Alda Services Cor-

poration (Alda) for lack of jurisdiction over the person of Alda and pursuant to the doctrine of forum non conveniens. We affirm.

EVI is a Delaware corporation authorized to do business within the state of Kansas. W. David Kimbrell is EVI's majority shareholder and chief operating officer. Alda is a Delaware corporation which conducts its business wholly within the state of Texas. Alda is owned by two doctors, D. William Davison and Gary R. Albertson.

In January of 1993, Davison received through the mail a general solicitation addressed to registered owners of Piper Malibu aircraft. Alda had owned such a plane since November 1989. The solicitation was from David Kimbrell of EVI, who had obtained a list of owners from an Oklahoma City company. The letter inquired as to whether Alda was interested in selling its plane and, if so, to send an information sheet to Kimbrell by facsimile. Davison responded to Kimbrell's solicitation with a facsimile transmission, describing the aircraft and listing an asking price of $390,000. That same day, Kimbrell telephoned Davison and indicated further interest in the plane. Davison sent a follow-up letter dated January 4, 1993, to Kimbrell in Lawrence, Kansas, repeating the $390,000 asking price and inviting a counteroffer.

On January 7, 1993, Kimbrell went to Texas to examine the plane. Kimbrell arranged for a pre-purchase inspection, which was performed in Texas. After further negotiation, the parties agreed upon $358,000 as the purchase price. On January 9, Kimbrell wired the money from Lawrence, Kansas, to Alda's bank account in Texas. Kimbrell agreed to take delivery of the plane in Texas and sent a pilot to take possession of the plane and fly it back to Kansas. Davison then mailed to Kimbrell a bill of sale showing a transfer of the aircraft from Alda to EVI.

After taking possession of the plane, EVI discovered significant problems with the aircraft. Kimbrell attempted to resolve the matter through correspondence and telephone calls, but Alda refused to absorb any of the cost of repairing the problems.

On March 24, 1993, EVI filed suit against Alda in Douglas County, Kansas, alleging breach of express warranty and breach of contract. Alda moved for dismissal of EVI's action due to lack of personal jurisdiction over Alda in Kansas and also under the doctrine of forum non conveniens. The matter was argued to the

court on June 1, 1993. The district court, after considering the briefs and arguments by both parties, found as follows.

"Here—I think the key here is that we have two noncommercial entities, two private individuals dealing with the sale of an airplane. Further, that the Texas entity was involved, was not involved with advertising it around the country, but merely responded to a mass wanting-to-buy type of situation. Everything was accomplished in Texas. These people did not hold themselves out in the ordinary course of business as being plane sellers or plane buyers, and basically, although we did have a FAX saying, 'Yes, I do have a plane,' only type of contact that was here was that of sending money to Texas.

"I think that the cases cited by the Plaintiff are all distinguishable in that these were either, 1) commercial dealers; or there was greater contact. I think the Due Process law of the State—and I'll need to find that case here—*Oxford Transportation Services v. MAB Refrigerated* talks about 'the non-resident defendant must perform some act by which it purposefully avails itself of the protection of the laws of the State of Kansas; the claim must arise out of, or result from, this act . . .; and 3) the exercise of jurisdiction over the defendant must be reasonable'. I think the Plaintiff filing this lawsuit in Kansas fails on all those grounds and because of that, this matter—that this Court lacks jurisdiction over the claim which Plaintiff has filed, and this needs to be somewhere else. Even if the payment for this airplane was sent from Kansas to Texas was sufficient, it certainly would not be convenient, and it would be in the interest of justice to have the matter filed elsewhere. Here we have the owners of the plane are in Texas, annual inspections which was relied upon, individuals who did that are in Texas, the independent inspector, or person who was paid by the Plaintiff in this suit to check the plane over is in Texas. I think Texas law probably would apply to this particular matter, and there was one other matter I wanted to mention concerning this which escapes me at the time. It primarily deals with everything, all of the witnesses. I think it would be probably less expensive for both parties particularly in the deposing of witnesses to have the matter heard where the witnesses are, and that is in the State of Texas.

"For both of those reasons, I grant the Defendant's motion to dismiss this case, and further on the grounds this Court lacks jurisdiction, and on the grounds that this is an inconvenient forum, and finally I deny attorney's fees."

EVI timely appeals.

On appeal, we are asked to look at two issues raised by EVI: (1) Did the trial court err in dismissing EVI's action for lack of personal jurisdiction, and (2) did the trial court err in ruling that Kansas is not the most convenient forum to adjudicate the merits of this case?

In Kansas, a two-step analysis is used to determine whether a court has personal jurisdiction over a defendant. "First, the court must determine whether it has jurisdiction under the Kansas long-arm statute, K.S.A. § 60-308(b). Second, the court must determine whether the exercise of personal jurisdiction comports with constitutional guarantees of due process." *Oxford Transp. Serv. v. MAB Refrig. Transport*, 792 F. Supp. 710, 712 (D. Kan. 1992). "The Kansas long arm statute is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the U.S. Constitution." *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 777, 740 P.2d 1089 (1987).

"When the existence of personal jurisdiction is controverted, plaintiff has the minimal burden of establishing a prima facie threshold showing that constitutional and statutory requirements for the assumption of personal jurisdiction are met." *Volt Delta Resources, Inc.*, 241 Kan. at 777-78. The court may consider affidavits and documentary evidence in determining whether such a showing has been made but must give the plaintiff the benefit of all factual doubt. *Thermal Insulation Systems v. Ark-Seal Corp.*, 508 F. Supp. 434, 437 (D. Kan. 1980). See *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 381, 834 P.2d 1344 (1992).

K.S.A. 1993 Supp. 60-308(b) provides in relevant part:

"Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

(1) Transaction of any business within this state;

. . . .

(5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state."

EVI argues that jurisdiction was proper under either of the above two subsections.

Under K.S.A. 1993 Supp. 60-308(b)(1), " '[b]usiness' is transacted within the state when an individual is within or enters this state in person or by an agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose

to improve his economic conditions and satisfy his desires." *Volt Delta Resources, Inc.*, 241 Kan. at 778. "The transaction of business exists when the nonresident purposefully does some act or consummates some transaction in the forum state." *Anderson v. Heartland Oil & Gas, Inc.*, 249 Kan. 458, 467-68, 819 P.2d 1192 (1991), *cert. denied* 118 L. Ed. 2d 551 (1992). Kansas decisions have been unclear as to whether actual physical presence within the state is required to satisfy K.S.A. 1993 Supp. 60-308(b)(1); recent cases by the Kansas appellate courts suggest that a defendant need not physically enter the state to transact business within the meaning of the statute. See *Thermal Insulation Systems*, 508 F. Supp. at 437-41; *Davis v. Grace*, 4 Kan. App. 2d 704, 610 P.2d 1140 (1980); *Rosedale State Bank & Trust Co. v. Stringer*, 2 Kan. App. 2d 331, 579 P.2d 158 (1978). With the advent of modern technology, persons need not stand in each other's physical presence to transact business. See *Kiefer v. May*, 46 Mich. App. 566, 572, 208 N.W.2d 539 (1973). Physical presence is merely one factor to consider. *Thermal Insulation Systems*, 508 F. Supp. at 442.

Finding the requisite "transaction of any business" demands an examination of all of the defendant's activities within Kansas which related to the present cause of action. EVI contends that Alda's contacts with EVI—the facsimile transmission, the telephone conversations, the receipt of funds from Lawrence, and the transfer of the bill of sale to EVI—amounted to the "transaction of any business" pursuant to the statute. Alda, however, argues that none of its agents entered Kansas at any time in connection with the sale of the airplane. Alda did not otherwise conduct business in Kansas; its business deals with running weight reduction clinics in Texas. Alda contends that it did not affirmatively seek to improve its economic situation by soliciting business in Kansas but merely responded to EVI's general solicitation. Finally, it would appear that the consummation of the sale took place entirely within the state of Texas during Kimbrell's visit to inspect the plane. Based on the rule that the statute should be liberally construed to the limits of due process, we conclude that Alda's contacts with Kimbrell, a Kansas resident, are sufficient.

Subsection (5) was added to the Kansas long arm statute in 1971 in an effort to broaden the scope of 60-308 and to more

fully extend the jurisdiction of the courts of this state to the extent authorized by due process. *Rosedale State Bank & Trust Co.*, 2 Kan. App. 2d at 333. "This type of statute is commonly referred to as a 'single act' statute in that it permits the exercise of personal jurisdiction over a nonresident defendant based solely on the making or performance of a single contract within the state." *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 851, 528 P.2d 1248 (1974).

In *Oxford Transp. Serv.*, 792 F. Supp. at 712, the United States District Court for Kansas stated that part performance within the forum state has been recognized where the resident has paid funds to the nonresident, citing *Slawson v. Hair*, 716 F. Supp. 1373, 1376 (D. Kan. 1989). However, both of the contracts at issue in *Oxford Transp. Serv.* and *Slawson* expressly stated that the plaintiff was to receive payment from an office in Kansas. 792 F. Supp. at 712; 716 F. Supp. at 1376. See *Marcus Food Co. v. Family Foods of Tallahassee*, 729 F. Supp. 753, 757 (D. Kan. 1990).

EVI correctly argues that its wire transfer to Texas would presumably be sufficient to establish jurisdiction under K.S.A. 1993 Supp. 60-308(b)(5). However, there is no evidence that payment by wire transfer from Lawrence was an agreed upon term of the contract between the parties. Alda argues that Kimbrell suggested this method of payment for convenience sake after the verbal contract was made; it was not a contract requirement entered into by the agreement of the parties to be performed in Kansas.

The agreement was never reduced to writing. Nothing in Kimbrell's affidavit suggests that his payment of the funds by wire transfer was part of the contract. Alda argues that this single act of wire transferring the funds, done at EVI's election and not pursuant to the contract, should not be sufficient to establish personal jurisdiction under K.S.A. 1993 Supp. 60-308(b)(5).

Even assuming that jurisdiction was achieved under either subsection of the long arm statute, Alda's contact must still satisfy the due process considerations of the Fourteenth Amendment. Satisfaction of due process depends on the quality and nature of the activities of the defendant, determined on a case-by-case basis. *Woodring v. Hall*, 200 Kan. 597, 602, 438 P.2d 135 (1968).

In *Volt Delta Resources, Inc. v. Devine*, 241 Kan. at 779-80, the Kansas Supreme Court recently addressed this issue:

"The Fourteenth Amendment's due process clause limits the forum state's assertion of personal jurisdiction over nonresidents. Minimum contacts with the forum state must exist so that the assertion of personal jurisdiction will not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945).

"In addition, before a state can assert personal jurisdiction, the individuals must have 'fair warning' that a particular activity may subject them to the jurisdiction of a foreign sovereign. The 'fair warning' requirement is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. Where an individual purposefully directs his activities toward forum residents or has purposefully derived benefits from their interstate activities, a state generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."

See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980) (minimum contacts test met where defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there).

The relevant contacts are as follows. Alda faxed a response to Kimbrell's general mail solicitation regarding the aircraft to Kimbrell in Kansas. Kimbrell telephoned Alda to discuss the plane that same day, and Alda then sent a follow-up letter to Kimbrell in Kansas listing the purchase price and inviting a counteroffer. Kimbrell soon traveled to Texas, where the agreement was reached. After Alda received the wire transfer of funds from Lawrence, it mailed the bill of sale to Kimbrell in Kansas.

While Alda did not initiate the transaction or solicit the sale, it eagerly responded to EVI's invitation by offering to sell its plane to Kimbrell. Alda knew Kimbrell was a resident of Kansas and that his company, EVI, operated in that state. Alda stood to gain significant economic advantage through this transaction. "In addition, Kansas has a manifest interest in protecting its

residents against nonresidents who breach contracts." *Thermal Insulation Systems*, 508 F. Supp. at 443.

Finally, Alda could reasonably foresee and anticipate that any complaints about the plane would most likely originate in Kansas, the purchaser's home state. When considered as a whole, it would appear that Alda purposefully availed itself of the privilege of conducting activities within Kansas.

Although not dispositive of the final ruling here, we find that jurisdiction lies under K.S.A. 1993 Supp. 60-308(b)(1) or (b)(5).

The next question is whether the district properly applied the doctrine of forum non conveniens in refusing to hear the case.

. Forum non conveniens is an equitable doctrine that refers to the discretionary power of a court to decline to exercise jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum. Black's Law Dictionary 655 (Deluxe 6th ed. 1990). "Trial courts have the inherent power to dismiss a transitory cause of action under the doctrine where facts and circumstances call for its application." *Volt Delta Resources, Inc.*, 241 Kan. at 781.

In *Gonzales, Administrator v. Atchison, T. & S.F. Rly. Co.*, 189 Kan. 689, 371 P.2d 193 (1962), the Kansas Supreme Court adopted the reasoning of the United States Supreme Court as expressed in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947), in determining when a court should decline to accept jurisdiction under forum non conveniens.

"Among the considerations to be weighed by the trial court when determining whether to decline jurisdiction are the relative ease of access to the sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses. Other factors include the possibility of viewing the premises, if practical; any question as to the enforceability of a judgment if one is obtained; the relative advantages and obstacles to a fair trial; and all other practical problems that make a trial of the case easy, expeditious, and inexpensive." *Volt Delta Resources, Inc.*, 241 Kan. at 781.

"[A]s application of the doctrine is within trial court discretion, the trial court will be reversed on appeal only when it has abused that discretion." *Stephens Cattle Co. v. Hollingsworth*, 14 Kan. App. 2d 812, 814, 799 P.2d 527 (1990). "Judicial discretion is

abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

The trial court based its decision to dismiss the case under the forum non conveniens doctrine because: (1) The prior owners of the plane reside in Texas; (2) the individuals who allegedly performed the annual inspection upon which Kimbrell relied to purchase the plane are in Texas; (3) the pre-purchase inspector resides in Texas; (4) Texas law would apply as the contract was made in Texas; and (5) "it would be probably less expensive for both parties particularly in the deposing of witnesses to have the matter heard where the witnesses are."

Moreover, all of the evidence concerning the history of the plane, its routine inspections, the pre-purchase inspections, and its condition prior to and at the time of the sale is located in Texas. In addition, if any parties are added to the suit, they likely would be Texas residents. Finally, any judgment against Alda would have to be enforced in Texas.

By contrast, few practical or equitable considerations exist in support of trying this matter in Kansas. Considering all of the relative advantages and obstacles to a fair trial, the district court did not abuse its discretion by dismissing the case.

Affirmed.